[Civ. No. 7129. Third Dist. May 31, 1945.]

SIMON NEWMAN COMPANY (a Corporation), Respondent, v. JOE S. SANCHES et al., Defendants; EILEEN SANCHES, a Minor, etc. et al., Appellants.

John H. Machado and H. K. Landram for Appellants.

C. Ray Robinson, W. B. Treadwell and Edward F. Tread-well for Respondent.

THOMPSON, J.—This is an appeal from a judgment apportioning the water of a drainage and irrigation ditch which was maintained for the benefit of a large tract of land from which the parcels involved in this suit were acquired. The deeds contained no specific reference to the ditch or water rights. It was assumed the water rights were conveyed pursuant to section 1104 of the Civil Code as easements or appurtenances attached to the freehold and that the respective parties were entitled to correlative shares of the water for necessary use on the farms. On the theory that the water was necessarily used on all the separate parcels for similar purposes, it was apportioned on the basis of the relative number of acres which each parcel contained, except that about 70 acres of land "south of the slough described in paragraph X of the findings of fact" were excluded from participation therein. The appellants were enjoined from interfering with plaintiff's adjudicated share of the water.

The defendants Manuel W. Sanches and Edward Sanches were not served with process, and the court reserved jurisdiction to subsequently determine their correlative shares of the water. Eileen Sanches, a minor, appeared by Joe S. Sanches, her duly appointed guardian ad litem. Eileen Sanches, Joe S. Sanches and E. A. Sequeira only have appealed from the judgment.

The amended complaint alleges essential facts constituting a valid cause of action for apportionment of the water of a drainage and irrigation ditch maintained for the use and benefit of each portion of a large tract of land designated as the McPike Ranch which was subdivided and from which each defendant acquired his separate parcel. The evidence shows that Miller & Lux, Inc., owned a large tract of land in Merced and Stanislaus Counties, which included the McPike Ranch consisting of several hundred acres of land; that Miller & Lux, Inc., sold and conveyed the McPike Ranch to plaintiff, Simon Newman Company, in 1927. That ranch was conveyed to plaintiff by two deeds which failed to specifically mention an existing irrigation ditch or water rights therein. The deeds contained the usual provision for conveyance of all "tenements, hereditaments and appurtenances" belonging to the land. Miller & Lux, Inc., constructed and maintained a ditch through the McPike Ranch, called the "Miller Drain

Ditch.'' It had been used for forty years for drainage and irrigation purposes for the benefit of that ranch and other contiguous properties. Into that ditch the excess surface and storm waters flowed. Pursuant to written contracts, excess water was piped into that ditch from the city of Newman and from the Golden Gate Creamery Company. The plaintiff, Simon Newman Company, subdivided the McPike Ranch and sold and conveyed several separate parcels thereof as follows: To Joe S. Sanches, April 15, 1929, 78.220 acres; to Joe and Rose Sanches, April 15, 1929, 80.819 acres; to A. M. Souza, April 15, 1929, 95.778 acres; to Joe S. Sanches, January 13, 1930, 26.961 acres; to J. T. Braza, January 16, 1934, 80.187 acres; to Joe M. Borba, August 23, 1937, 101.559 acres, and to Newman Swamp Rats, Inc., January 5, 1940, 8.00 acres, making a total of 471.524 acres of land. The deeds to these parcels of land merely contained the usual clauses conveying therewith all ''tenements, hereditaments and appurtenances thereunto belonging.'' For their respective claims of correlative water rights both the plaintiff and the defendants relied upon the last mentioned clauses with regard to appurtenances. Title to the water by adverse possession is not involved in this suit.

It appears, without substantial conflict, that subsequent to their purchases of said tracts of land the appellants constructed and maintained lateral ditches connected with the Miller Drain Ditch, together with a bulkhead, weir and three-foot standpipe, by means of which they diverted water therefrom and augmented their supply for irrigation purposes. The diversion devices, with the exception of the lateral ditches, were not installed until shortly before the commencement of this action. This suit was instituted and tried on the theory, as plaintiff's attorney conceded, that each party ''should have correlative, equal rights in this (Miller Drain) ditch, or in this water.''

The court adopted findings substantially as previously stated. The court further found that the conveyances were made ''to include . . . tenements, hereditaments and appurtenances belonging to the lands conveyed, but subject to an easement for the said (Miller Drain) ditch and the flowage of water through the same;'' that the ditch was intended to

be used "for the irrigation of all of said land, except that portion of the 80.958 acre tract" conveyed to Joe S. and Rose Sanches, "which lies south of the slough that runs through said property" consisting of about seventy acres which were "irrigated from another ditch"; that the plaintiff retained and now owns 816.206 acres of said McPike Ranch, together with an easement in said Miller Ditch and the water flowing therein, as appurtenant thereto. Thereupon the court apportioned the water of said ditch for irrigation purposes and to water livestock in the following determined proportions, to wit:

To Simon Newman Company the $\frac{816.206}{1177.614}$ share thereof; to Joe S. Sanches, Manuel W. Sanches, Edward Sanches and Eileen Sanches the $\frac{10.000}{1177.614}$ share thereof; to Joe M. Borba the $\frac{101.559}{1177.614}$ share thereof; to E. A. Sequeira the $\frac{98.778}{1177.614}$ share thereof; to Joe S. Sanches the $\frac{146.071}{1177.614}$ share thereof; to Newman Swamp Rats, Inc., the $\frac{8.000}{1177.614}$ share thereof.

The court further found that in 1939 the plaintiff acquired by contract with the Gustine Drainage District the right to an undetermined quantity of water pumped from its land and discharged by said district into the Miller Ditch; that the defendants claimed the right to "all of the water of said ditch," and in pursuance thereof they have "constructed works" in said ditch and have diverted the water therefrom; that in 1943 defendants constructed a concrete box at the entrance of the Gustine Drainage District pipe which connects with the Miller Drain Ditch, thereby diverting all of said drainage district water; that the defendants threaten to continue to divert all of said water from said ditch unless they are restrained from so doing.

Judgment was accordingly rendered, determining that plaintiff and the defendants are the owners of and entitled to their correlative shares of the water of said Miller Drain Ditch previously stated, for irrigation of their respective tracts of land and for the watering of livestock determined on the basis of the relative number of acres of land which such owner possesses. The appellants were enjoined from interfering with plaintiff's free use of its ascertained share of the water.

From that judgment Joe S. Sanches, Eileen Sanches and E. A. Sequeira have appealed.

The appellants contend that the findings and judgment are not supported by the evidence for the reasons that the deeds, by means of which plaintiff acquired title to the land involved in this litigation, conveyed no title or easement to water rights or ditch; that the court erred in apportioning the water on a basis of mere relative acreage of subdivided portions of the original McPike Ranch; that there is a total absence of proof of the number of acres which that ranch originally contained or of the number of acres retained by plaintiff; that the evidence is uncontradicted that a substantial part of the ranch was used and susceptible of use for producing clover and other products, while the balance was merely grazing land, except that an undetermined part thereof is swamp land which was wrongfully included in the relative acreage apportionment; that there is no finding of the relative quantity of water necessary for use on any portion of the properties involved, and that the court failed to determine an essential issue with respect to claimed damages for diverting water from the ditch.

We are of the opinion the findings and judgment are not supported by the evidence.

▉ The appellants contend that the court erred in finding that the total acreage of the McPike Ranch subject to apportionment of water was 1177.614, and that plaintiff is still the owner of 816.206 acres thereof. It is true that the deeds from Miller & Lux, Inc., to plaintiff show a conveyance of a total acreage of 1304.13, *less excepted roadways*. The deeds fail to indicate the number of acres excepted for existing roadways. We are unable to find any evidence of the number of acres which were excepted for road purposes. We must therefore conclude there is no proof to support the finding that the McPike Ranch, as conveyed, consisted of 1177.614 acres.

There is evidence that the plaintiff subsequently subdivided and conveyed the following seven parcels of land:

To Joe S. Sanches ...........April 15, 1929.. 78.220 acres
To Joe S. and Rose Sanches....April 15, 1929.. 80.819 acres
To A. M. Souza .............April 15, 1929.. 95.778 acres
To Joe S. Sanches............Jan. 13, 1930.. 26.961 acres
To J. T. Braza ..............Jan. 16, 1934.. 80.187 acres
To Joe M. Borba ............Aug. 23, 1937..101.559 acres
To Newman Swamp Rats, Inc..Jan. 5, 1940.. 8.000 acres

Total number of acres sold ..............471.524

■ It is apparent that an apportionment of water based solely on the relative number of acres of land which each owner possesses, without determining the quantity of water necessary for use on any parcel or portion thereof should depend upon an accurate estimate of the actual number of acres in each parcel subject to similar irrigation and that all of the land in each tract is susceptible of producing the same variety of crops, or that it may reasonably be used for similar purposes. Otherwise, the apportionment may not be deemed to be equitable. (*Rancho Santa Margarita* v. *Vail*, 11 Cal.2d 501, 525 [81 P.2d 533].) In the present case the only evidence that the several parcels of land may be used for the production of similar crops was the evidence of Thomas C. Mott, a civil engineer, who was called as a witness by plaintiff. He testified in that regard as follows:

"Q. You are familiar with the general type of soil through this McPike Place, are you? A. Yes. Q. And you are familiar with the irrigating of that type of land, the watering of it? A. Yes. Q. And taking the average of these various ownerships that are marked on the lands of Joe and Rose Sanches, Joe Sanches, the Souza place, the Borba place, and the Swamp Rats, how would you say this would be as to the amount of water that would be required, how would they compare? A. I don't know that there are any material differences in the irrigation requirements of one parcel as against another."

It is true that the evidence shows that the chief use of the several parcels of land was for grazing cattle. The evidence does show that clover, alfalfa and some other crops had been raised on some of the land. It fails to show what particular lands produced such crops, or how many acres were used for that purpose. The evidence also shows that some of the defendants also watered their livestock from the ditch in question. But it does not appear how many cattle were so watered.

■ Assuming, without so deciding, that the foregoing quoted evidence may be sufficient to support the necessary finding that all of said parcels of land were susceptible of producing similar crops and that they therefore require an equal amount of water per acre for irrigation purposes, the evidence appears to be fatally defective in failing to show the relative number of acres owned by plaintiff, or the number of acres of each parcel requiring irrigation. The court assumed that the McPike Ranch, for which it is claimed the

water of the Miller Ditch was reserved as an appurtenance thereto, consisted of 1177.614 acres. There is no evidence to support that assumption. The only proof of the acreage of that ranch is found in the two deeds from Miller & Lux, Inc., to plaintiff. These deeds purport to convey to plaintiff 1304.13 acres of land, *saving and excepting therefrom* "all that portion of aforesaid sixty foot road reservation lying within above described tract of land for use as public roads." Another roadway is also excepted from those conveyances. We are unable to determine how many acres of land were reserved to the grantor as roadways. The evidence does show that plaintiff sold seven parcels of land from the McPike Ranch aggregating 471.524 acres of land. From the foregoing it appears that the findings and judgment are not supported by the evidence, since it is impossible to determine how many acres of the McPike Ranch remain in possession of the plaintiff.

█ Moreover, the evidence is uncontradicted that an extensive swamp, consisting of undetermined acreage, extends over and across a considerable portion of the lands of both the plaintiff and the appellants. We must assume that swamp land is not entitled to be considered in apportioning the water, for it requires no irrigation and would not be benefited thereby. We are of the opinion the court erred in including that swamp land in its apportionment of water. We are unable to determine how many acres are included therein.

█ Prior to the conveyance of the McPike Ranch from Miller & Lux, Inc., to the plaintiff, it was irrigated in part by water which flowed from the San Joaquin and Kings River Canal. The water from that source was specifically reserved by Miller & Lux, Inc., in its deed to plaintiff dated September 17, 1927. That deed provided that: "Party of the second part [Newman Company] shall acquire no right, title or interest in or to said water or the use thereof." Mr. Mott testified that Miller & Lux, Inc., abandoned that source of supply in 1929. He stated that the McPike Ranch was not thereafter irrigated from that source. Independently of the water which was formerly derived from that source, it satisfactorily appears that the Miller Drain Ditch was continuously maintained and supplied with water from other sources, as previously stated, from which portions of the McPike Ranch were irrigated. But it appears without conflict that the Miller Drain Ditch did not furnish water to irrigate "all of the

McPike Ranch.'' The court found, and it is conceded, that ditch did not supply water for appellants' land "south of the slough.'' That land was irrigated by means of water from another ditch. The court excluded 71 acres of that portion of appellants' land from participating in the apportionment of water. But it is also undisputed that a portion of the land south of that same swamp, which was retained by plaintiff, was not irrigated by water from the Miller Ditch. Mr. Mott testified in that regard: "Q. . . . Now, it [water from the Miller Ditch] did not irrigate all of the McPike Ranch, did it? A. No.'' Mr. C. E. Hubbs, another of plaintiff's witnesses, also testified in that regard: "A. It was impossible to get the water out of that ditch across that slough. Q. It was never used over there? A. No.'' In spite of the fact that a considerable number of acres of plaintiff's land south of the swamp was never irrigated from that Miller Ditch, they were included in plaintiff's total acreage which participated in the apportionment of water. There is no evidence of the number of acres belonging to plaintiff which lie south of the slough. But the maps indicate there are many acres south of that slough. We are persuaded the apportionment was inequitable in allowing plaintiff water for use on the undetermined number of acres south of the slough, which were not irrigated from that ditch, and because the acreage contained in the slough was not excluded from the apportionment. For those reasons and because there is an absence of evidence showing either the total number of acres in the original grant of the McPike Ranch, or the acreage retained by plaintiff which is subject to irrigation, the findings and judgment are not supported by the evidence.

It is not necessary to consider the numerous other assignments of error which the appellants urge on this appeal.

■ It is true, as the respondent asserts, that land irrigated by water from an open and obvious ditch, which has been maintained for many years to uniformly irrigate an entire tract of land from which parcels have been sold and conveyed, may be benefited or burdened, by an implied easement as appurtenant to each parcel for necessary, correlative irrigation purposes in favor of the grantor or the grantees. (Civ. Code, § 1104; *Palvutzian* v. *Terkanian*, 47 Cal.App. 47 [190 P. 503]; *Kallenburg* v. *Long*, 39 Cal.App. 731 [179 P. 730]; *Nay* v. *Bernard*, 40 Cal.App. 364 [180 P. 827]; *Southern Pacific Co.* v. *Los Angeles Milling Co.*, 177 Cal. 395 [170 P.

829]; 2 Kinney on Irr. and Water Rights (2d ed.), p. 1786, §§ 1005-1008; 1 Wiel on Water Rights (3d ed.), p. 592, § 553; 9 Cal.Jur. § 11, p. 957; 25 Cal.Jur. § 95, p. 1088; 28 C.J.S. §§ 30-33, p. 686; 58 A.L.R. 824, note.)  To convey an easement by implication, as the authorities uniformly hold, and in accordance with the rule announced in the text of 28 C.J.S., *supra,* it must appear that the use which is appurtenant to the land was open, obvious, apparent, continuous and necessary at a time prior to severance of the property.

In apportioning water from an irrigation ditch on the acreage basis pursuant to an implied easement it should appear that each acre participating in the award is susceptible of similar use for the production of crops or otherwise, and that each acre has acquired a right to the water pursuant to the implied easement for necessary beneficial use. We are of the opinion the record in this case does not adequately show these facts.

For the foregoing reasons the judgment is reversed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied June 30, 1945.